IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAYNER RODRIGUEZ DELGADO,

      Petitioner,

v.                                                                                      No. 1:26-cv-00727-SMD-JFR

MARKWAYNE MULLIN,[1] *et al.*,

      Respondents.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

**THIS MATTER** is before the Court on Petitioner's Pro Se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241.  Doc. 1.  The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons set forth below, the Petition is **GRANTED**.

## BACKGROUND

Petitioner Rayner Rodriguez Delgado, a citizen of Cuba, is currently in the custody of Immigration and Customs Enforcement ("ICE") at the Torrance County Detention Center in Estancia, New Mexico.  Doc. 1 ¶ 1.  Petitioner first entered the United States in 2019.  *Id.* ¶ 3. Petitioner was placed in removal proceedings and ordered removed on December 11, 2019.  *Id.* The order became final on January 10, 2020.  Doc. 8 at 1.  Petitioner continued to live in the United States without incident, complying with his Order of Supervision at all times, for the next five years.  Doc. 1 ¶ 6.  Petitioner currently has an application for adjustment of status pending.  *Id.*

On June 17, 2025, an immigration judge denied Petitioner's motion for stay of removal. Doc. 8 at 2.  Petitioner appealed that decision and the Board of Immigration Appeals denied it on March 24, 2026.  *Id.*  ICE detained petitioner on August 18, 2025.  Doc. 1 ¶ 4. Petitioner has now

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the case caption shall be updated to reflect that Markwayne Mullin is the Secretary of Homeland Security.  All future filings should be in the name of the substituted party.

been detained for almost one year.

Respondents do not dispute the material facts. *See generally* Doc. 8. Nevertheless, Respondents object to release and contend that Petitioner has failed to establish that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 10. Respondents dismiss Petitioner's concerns over prolong detention, noting that Petitioner has only put forth that "three countries have refused to accept him." *Id.* at 4. Respondents initially represented that if the Court lifted the stay, they would be able to remove Petitioner to Mexico within 5 days. Doc. 9 at 2.

However, on May 12, 2026, Respondents amended their response. They informed the Court that Cuba had formally denied repatriation of Petitioner, but that "the Government of Mexico had agreed to accept Petitioner through the Cuba, Haiti, Nicaragua, Venezuela ["CHNV"] agreement." Doc. 11 at 2. Petitioner replied and aptly pointed out that (1) there was no evidence the Mexican government had agreed to accept Petitioner and (2) the CHNV program had been abolished. Doc. 12 at 3–4.

The Court then entered an order finding that the CHNV program could not apply to Petitioner given that it was implemented in 2022 (Petitioner entered in 2019) and abolished in 2025 (it is now 2026). *See* Doc. 13. Accordingly, the Court ordered Respondents to "file documentation showing that Mexico has formally agreed to accept Petitioner." *Id.* Respondents submitted a status report stating that they "do not have documentation to establish that Mexico has agreed to accept Petitioner." Doc. 14 at 1. Respondents did not expound upon the incorporeal CHNV program.

## DISCUSSION

This Court has jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to

immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A district court may grant a writ of habeas corpus to a petitioner who demonstrates that "[h]e is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

I.      Statutory Framework: 8 U.S.C. § 1231

Under 8 U.S.C. § 1231(a)(1), the Government has a 90-day period in which to remove a noncitizen after a removal order becomes final. If the Government is unable to effect removal within that 90-day period, continued detention becomes discretionary. *See* 8 U.S.C. § 1231(a)(6). Indefinite detention, however, is not permitted. *Zadvydas*, 533 U.S. at 689 ("In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention."). In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. If removal is not practically attainable, detention no longer serves its statutory purpose of 3 "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court established a "presumptively reasonable period of detention" of six months "for the sake of uniform administration in the federal courts." *Id.* at 701. After this six-month period, if the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing. *Id.* If the Government cannot establish a significant likelihood of removal in the reasonably foreseeable future, continued detention is no longer authorized by statute. *Id.* at 699–700. In that case, the Government can continue to keep tabs on the noncitizen through reasonable conditions of supervision while it continues removal efforts. Courts typically consider the cumulative time spent in detention when evaluating a habeas claim challenging detention as

unreasonable per *Zadvydas*. *Vo v. Bondi*, No. 2:25-CV-02244, 2025 WL 3653722, at *3 (W.D. Wash. Dec. 17, 2025) ("The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered."); *see, e.g.*, *Giorges v. Kaiser*, No. 25-cv-7683, 2025 WL 2898967, at *8 n.5 (N.D. Cal Oct. 10, 2025); *Bulle v. Wesling*, No. 26-CV-019, 2026 WL 183840, at *4 (D.R.I. Jan. 23, 2026).

II.    Respondents' Continued Detention of Petitioner Violates the Fifth Amendment.

The Court finds that Petitioner's continued detention violates his Fifth Amendment rights. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *Garcia Domingo v. Castro*, 806 F. Supp. 1246, 1251–52 (D.N.M. 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Though the Government "may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings," that "limited period" cannot be indefinite. *Demore v. Kim*, 538 U.S. 510, 527 (2003). As the length of detention stretches on, an individual's due process interests escalate and the government's burden to justify continued detention mounts. *Id.* at 529; *Jennings*, 583 U.S. at 310–11; *Mohamed v. Sec'y Dep't of Homeland Sec.*, 376 F. Supp. 3d 950, 957 (D. Minn. 2018).

Petitioner has been detained for approximately 11 months.[2] Respondents are now outside the presumptively reasonable six-month detention period. *Zadvydas*, 533 U.S. at 695. Though Respondents assert that Petitioner for his failure to provide "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future," that contention has become increasingly specious. Doc. 8 at 4 (quoting *Zadvydas*, 533 U.S. at 701). Recall that three countries have refused to accept Petitioner, Cuba has officially denied repatriation of Petitioner, and the Government cannot procure any evidence that Mexico agreed to accept him. Doc. 8 at 4; Doc. 11 at 2; Doc. 14 at 1. Suffice it to say that Respondents have not established a "significant likelihood of removal."

Respondents have therefore violated Petitioner's Fifth Amendment rights by keeping him detained indefinitely without sufficient process or any proffered explanation for what purpose detention serves. *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981) ("Detention pending deportation seems properly analogized to incarceration pending trial or other disposition of a criminal charge, and is, thus, justifiable only as a necessary, temporary measure."). Because Respondents have offered no independent legal basis for continued custody, Petitioner is entitled to relief pursuant to § 2241.

### CONCLUSION

It is hereby **ORDERED**:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;

2) Respondents' Motion to Amend (Doc. 11) is **MOOT**;

---

[2] Respondents initially argued that the six-month removal period did not begin until March 24, 2026, when they learned that Petitioner's appeal to stay his removal had been denied. Doc. 8 at 4. This contention contradicted Deportation Officer Hannah Patrick's declaration, which states that "ERO did not attempt removal during this period [August 28, 2025–March 24, 2024] because of the pending stay application with the BIA, though the filing of this application did not provide an automatic stay of removal." Doc. 8, Ex. 1 ¶ 14. Respondents changed their position later on, conceding that the appeal "in and of itself, does not stay removal." Doc. 11 at 1. The Court therefore finds that, for purposes of *Zadvydas*, the clock began running on August 28, 2025.

3) Respondents shall release Petitioner within **48 hours** of this Order being entered;

4) Respondents shall facilitate Petitioner's transportation from the detention facility by notifying Petitioner's counsel when and where he can be collected, and by providing all necessary identity and travel documents to return to his primary address;

5) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release. This notice must specify: (1) the date, (2) the time, and (3) the manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements). Additionally, the notice must include (4) a description or copies of all discharge and travel documents provided to Petitioner at the time of release;

6) Respondents **SHALL NOT** remove Petitioner to any third country to which he does not have a removal order without first providing him with constitutionally and regulatorily compliant procedures;

7) The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order and to entertain any motions for attorneys' fees.

**IT IS SO ORDERED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**